# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-382V**

| | | |
|---|---|---|
| REKHA KUMAR, Petitioner, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent. | * * * * * * * * * * * | Chief Special Master Corcoran<br>Filed: October 8, 2026 |

*Jonathan J. Svitak,* Shannon Law Group, P.C., Woodridge, IL, for Petitioner.

*Sara DeStefano,* U.S. Department of Justice, Washington, DC, for Respondent.

## ENTITLEMENT DECISION[1]

Petitioner Rekha Kumar initiated this claim on March 17, 2023, under the National Vaccine Compensation Program (the "Vaccine Program"),[2] alleging the Table claim of shoulder injury related to vaccine administration ("SIRVA") due to a human papillomavirus ("HPV") vaccine received on August 19, 2021. Petition, dated March 17, 2023 (ECF No. 1). The matter was originally assigned to the "Special Processing Unit" (the "SPU") based on the assumption that a SIRVA claim could likely be settled, but was transferred out of the SPU in 2024 to my personal docket, due to fact questions relating to the Table elements and other aspects of the case. Order, dated September 11, 2024 (ECF No. 24).

The parties filed expert reports, and I determined the case could be resolved on the record. The parties subsequently filed briefs in support of their positions (including the question of the

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

proper quantum of damages).[3] *See* Petitioner's Motion for Ruling on the Record, dated December 18, 2025 (ECF No. 42) ("Mot."); Respondent's Brief, dated January 29, 2026 (ECF No. 43) ("Opp."); Reply, dated February 14, 2026 (ECF No. 44). Now, for the reasons set forth below, I find Petitioner is not entitled to damages because she has failed to meet the "severity requirement" that is applicable to all Program claims.

## I. Factual History

*Vaccination and Close-in-Time Accident*

Petitioner, a landscape architect, was 41 years old when she received the HPV vaccine in her left deltoid at a CVS Pharmacy on August 19, 2021—the second dose in a series beginning the month before. Ex. 2 at 10. She also received a flu vaccine in the same arm, two days later. *Id.* Petitioner has not filed any pre-vaccination medical records.

On August 27, 2021 (eight days post-vaccination), Petitioner received an email from the Bodor Clinic with "New Patient Paperwork" after "contacting Napa Medical Research Foundation regarding [her] shoulder pain." Ex. 10. No record has been filed directly establishing that Petitioner had reached out to this clinic complaining of pain, however, and there is no other record evidence within a week of vaccination of concerns about pain.

On August 31, 2021, Petitioner emailed a co-worker and stated that "[she] [had] been dealing with SIRVA recently," and further indicated that "[her] arm has been severely painful yesterday and [she thinks] it's best to work from home today . . . as driving puts further tension on [her] arm which would make the injury even worse." Ex. 11.

Two days later, on September 2, 2021, Petitioner had an automobile accident while making a left turn at an intersection. Ex. 13 at 7. She informed the officer on the scene that she had not been able to see the oncoming vehicle, despite her efforts to exercise care. *Id.* at 8. Petitioner's vehicle was significantly damaged, and Petitioner informed paramedics at the scene that she was experiencing pain and "what appeared to be a friction burn on her right elbow," but she declined further treatment or transport to the hospital by ambulance. *Id.* at 7.

On September 17, 2021, Petitioner went to a primary care provider ("PCP") to establish care. Ex. 3 at 23. She now reported "left arm and shoulder pain [she] developed after injection of [a] Tdap [sic] vaccine five weeks ago," with pain preventing her from raising her arms and causing her to cease working out at her gym. *Id.* She also reported her recent vehicle injury, and that she "[r]elated [her] injury with [an] impact during [the] motor vehicle accident when [her] arm was stuck between [the] car door and her body." *Id.* at 23, 24.

[3] Because I deny entitlement, I do not include herein an analysis of damages.

On exam, Petitioner displayed right shoulder swelling and bruising. Ex. 3 at 25. She also had left shoulder swelling and bruising, tenderness to palpation at the injection site on her left deltoid, and decreased range of motion ("ROM") with flexion, extension, external rotation, and abduction on the left. *Id.* at 24, 25. Further, she had positive painful arc, cross arm, empty can, Hawkins, apprehension, Speed, and Neer tests, and slightly reduced (4/5) strength with flexion, extension, abduction, and external rotation on the left. *Id.* at 25–26. The PCP proposed that Petitioner's left arm pain "[m]ight be [a] multifactorial injury developed after injection of [a] vaccine 5 weeks ago and then [a] [s]econd injury developed after [a] strain of [the] muscle of [her] left arm during a motor vehicle accident," and assessed her with a deltoid muscle strain, injection site induration, and musculoskeletal arm pain. *Id.* at 23. Petitioner was prescribed a topical gel and referred to physical therapy ("PT") for her shoulder symptoms. *Id.* at 23–24.

*Treatment Gap*

Petitioner subsequently obtained no further shoulder treatment for *over a year,* although she did have some medical treatment for unrelated issues. *See, e.g.*, Ex. 3 at 10 (September 29, 2021, mammogram). She has, however, contended that she lacked medical insurance for much of this timeframe, and that this was the reason for the lack of care.

Petitioner's insurance plan through Medi-Cal (California Medicaid) became effective on October 1, 2022. Ex. 19. Later that month (October 13th), she visited a new PCP for treatment of left shoulder pain that she reported had "started after she got a vaccine back in Aug[ust] 2021." Ex. 4 at 14. She recalled that the vaccine had been administered too high on her shoulder, and that "she was not able to move her arm up the next day and was in pain." *Id.* She also noted her 2021 automobile accident, that the shoulder pain had worsened in its aftermath, and that the loss of insurance had prevented her from going to PT or getting her shoulder imaged. *Id.* In the ensuing time, Petitioner stated, her ROM had improved, but she could not put her hand behind her back, she had pain with movement, she rated her constant pain 2-7/10, and she had pain radiating to her left arm, fingers, and neck. *Id.*

On exam, Petitioner complained of left shoulder pain with movement, and that she was unable to put her arm behind her back, had left elbow pain with movement, and had left second and third finger pain. Ex. 4 at 16. The PCP diagnosed Petitioner with chronic left shoulder pain, and left arm, finger, and neck pain, and referred her to PT, orthopedics, and a chiropractor. *Id.* at 17.

There is thereafter another gap in treatment during which Petitioner did not obtain medical care specific to her shoulder (although records note her chronic concerns) for another six months, despite some intervening medical encounters. *See, e.g.*, Ex. 4 at 27 (October 31, 2022, gynecologic exam). The next records relevant to Petitioner's alleged SIRVA are from the spring of 2023, and

they establish that she had 20 PT visits with chiropractor George Leung, D.C.—between May 12, 2023, and April 5, 2024. Ex. 9.

At the first visit with Dr. Leung in May 2023, Petitioner reported that her shoulder pain began two years earlier, and she complained of daily, moderate, dull, achy pain in her left shoulder to her elbow and fingers on her left hand. Ex. 9 at 3. Dr. Leung diagnosed her with left shoulder osteoarthritis. *Id.* at 6. Throughout this time, she also complained of unrelated concerns: right hip pain, left elbow pain, and left neck pain. *Id.* at 13 (right hip pain on June 9, 2023), 18 (left elbow pain on June 23, 2020), and 29 (left neck pain on July 28, 2023).

On July 21, 2023, Petitioner had an initial examination at Wellness Physical Therapy Center. Ex. 15 at 3. Petitioner complained of "constant" shoulder pain since a vaccination two years prior. *Id.* The physical therapist observed that Petitioner's pain was reported to be constant, and did not fluctuate when Petitioner's shoulder position changed. *Id.* at 4. Petitioner was instructed to see her doctor for further examination. *Id.*

In the fall of 2023, Petitioner obtained a left shoulder PT evaluation at Huntington Orthopedics. Ex. 14 at 4. On exam, her left shoulder ROM was within normal limits, and her shoulder strength was rated 4/5. *Id.* at 5. No additional treatment records have been filed.

*Witness Statements*

Petitioner and her family provided affidavits detailing the vaccine and injury. Petitioner confirmed that she received the HPV vaccine in her left shoulder on August 19, 2021, and noted that she believed the vaccination was administered "too high" on her shoulder, and that she felt immediate pain after the vaccination. Affidavit of Rekha Kumar, dated August 21, 2023, filed as Ex. 1 (ECF No. 8-2) ("Rekha Kumar Aff.") at 1. She claimed that the pain and her range of motion worsened over the next days and weeks. *Id.* at 1–2. Petitioner first told an urgent care provider at CVS Huntington about her pain from her HPV vaccine two days later. Supplemental Affidavit of Rekha Kumar, dated December 10, 2024, filed as Ex. 12 (ECF No. 27-4) ("Supp. Rekha Kumar Aff.") at 1.

Petitioner recalled researching shoulder injuries from vaccinations and had reached out to a research facility led by Dr. Marko Bodor (an orthopedic SIRVA specialist) towards the end of August 2021. Supp. Rekha Kumar Aff. at 2. Petitioner scheduled an appointment with her PCP for September 3, 2021. *Id.*

Petitioner also recounted her September 2021 car accident. Rekha Kumar Aff. at 2; Supp. Rekha Kumar Aff. at 2. Petitioner asserted that she did not receive any medical treatment in its aftermath, and the wreck did not impact her left shoulder. Supp. Rekha Kumar Aff. at 2. Petitioner

communicated this to Dr. Avakyan at Optum Del Mar on September 17, 2021. *Id.* at 2–3; Rekha Kumar Aff. at 2. Dr. Avakyan recommended that Petitioner start a nonsteroidal, anti-inflammatory medication, refrain from physical activity, and referred Petitioner to physical therapy. Rekha Kumar Aff. at 2.

Petitioner states that she started massage therapy for her left shoulder in November 2021 with a licensed massage therapist (and Petitioner's friend and neighbor) Rosario Piccolo. Rekha Kumar Aff. at 2; Affidavit of Rosaria Piccolo, dated August 21, 2023, filed as Ex. 6 (ECF No. 8-7) ("Rosaria Piccolo Aff.") at 1–2. Petitioner asserts that she saw Ms. Piccolo almost on a weekly basis for a year, but that their massage therapy sessions were not formally documented in part due to Petitioner losing her health insurance in September 2021. Rosaria Piccolo Aff. at 2; Supp. Rekha Kumar Aff. at 3. Ms. Piccolo noted Petitioner's limited range of motion and discomfort with certain left arm movements. Rosaria Piccolo Aff. at 2.

Petitioner regained health insurance in the fall of 2022 and in response scheduled a visit to address her shoulder problems with Dr. Ya-ting Chang on October 13, 2022. Rekha Kumar Aff. at 3. Dr. Ya-ting examined Petitioner's left shoulder and suggested chiropractic treatment that Petitioner continued to receive through the date she submitted her affidavit. *Id.*

Petitioner maintains that her pain never subsided, and that her injury has impacted her ability to perform her job as a landscape architect. Rekha Kumar Aff. at 3. Petitioner's friends and family echoed this sentiment in their own affidavits and added that Petitioner only started experiencing this left shoulder pain after her vaccination. *Id.*; Rosaria Piccolo Aff. at 1–2; Affidavit of Leena Kumar, dated August 21, 2023, filed as Ex. 5 (ECF No. 8-6) at 1–2; Affidavit of Shabnam Fotoohi, dated August 21, 2023, filed as Ex. 7 (ECF No. 8-8) ("Shabnam Fotoohi Aff.") at 1–2; Affidavit of Leila Hazratiha, dated August 21, 2023, filed as Ex. 8 (ECF No. 8-9) ("Leila Hazratiha Aff.") at 1–2.

## II. Expert Reports

### A. Petitioner's Expert – Dr. Uma Srikumaran

Dr. Srikumaran is an orthopedic surgeon and academic, and he prepared a single written report for Petitioner. Report, dated February 26, 2025, filed as Ex. 16 (ECF No. 32-1) ("Srikumaran Rep.").

Dr. Srikumaran attended Johns Hopkins University School of Medicine in Baltimore, Maryland, where he was trained in orthopedic surgery. Srikumaran Rep. at 1. He is board certified by the American Board of Orthopedic Surgery, a fellow of the American Academy of Orthopedic Surgery, a fellow of the American Orthopedic Association, and an active member of the American Shoulder and Elbow Surgeons. *Id.* Dr. Srikumaran currently serves as an Associate Professor at

Johns Hopkins University School of Medicine's Department of Orthopedic Surgery, where he engages in clinical activities focusing on shoulder injuries and disorders. *Id.* Dr. Srikumaran sees roughly 2,500–3,000 patients a year for shoulder issues and performs hundreds of shoulder surgeries each year. *Id.* Dr. Srikumaran has also published two articles specifically related to SIRVAs, along with numerous articles in the field of shoulder surgery. *Id.*

Dr. Srikumaran began with a summary of Petitioner's relevant medical history. Srikumaran Rep. at 2–3. Based on it, he concluded that the elements for a SIRVA claim (such as 48-hour post-vaccination onset) were met. *Id.* at 4–6. He further reviewed the independent support for the association between mis-administered vaccines and shoulder injuries. *Id.* at 7–12.

Dr. Srikumaran opined that the contemporaneous medical records and the sworn affidavits suggest Petitioner's left shoulder pain was caused by her HPV vaccination. Srikumaran Rep. at 4. Petitioner's pain began within the required forty-eight hours, as substantiated by the evidentiary record. *Id*. The emails sent between Petitioner and her co-worker and the Bodor Clinic provide additional proof of her pain preceding the motor vehicle accident. *Id.* (citing Ex. 10; Ex. 11). In Dr. Srikumaran's experience, patients can reliably identify the trigger for their shoulder pain when their testimony is consistent. *Id.* He clarified that his opinion on causation and timing can be based only in the medical records, but the affidavits provided additional context. *Id.* at 5.

Next, Dr. Srikumaran proposed that Petitioner's symptoms were largely limited to her left shoulder, as seen in her physical exams on September 17, 2021, and October 13, 2022. Srikumaran Rep. at 5. These visits demonstrated decreased range of motion and pain, along with complaints of pain extending down Petitioner's arm with no findings consistent with a cervicular radiculopathy. *Id.* (citing Ex. 3 at 24–25; Ex. 4 at 16). Finally, Dr. Srikumaran opined that Petitioner had suffered from her shoulder symptoms for well over six months. *Id.* He relied upon the medical records and the affidavits, concluding that the chiropractic care she received from George Leung through April 2024 is evidence of her continued symptoms from her vaccine. *Id.* (citing Ex. 9).

Dr. Srikumaran also assessed the causation-in-fact criteria. Srikumaran Rep. at 5. First, he explained the medical theory of causation. *Id.* The scientific literature supports the theory that vaccine injections can cause shoulder injuries. *Id.* at 5–6. (citing M. Bodor & E. Montalvo, *Vaccination-Related Shoulder Dysfunction*, 25 Vaccine 585, 586–87 (2007), filed as Ex. 16-4 (ECF No. 32-5) ("Bodor") ; S. Atanasoff et al., *Shoulder Injury Related to Vaccine Administration (SIRVA)*, 28 Vaccine 8049, 8051–52 (2010), filed as Ex. 16-1 (ECF No. 32-2) ("Atanasoff"); L. Arias et al., *Risk of Bursitis and Other Injuries and Dysfunctions of the Shoulder Following Vaccinations*, 35 Vaccine 4870, 4870, 4874 (2017), filed as Ex. 16-2 (ECF No. 32-3)). Specifically, the injection of an antigenic material is the likely cause of immune mediated inflammation, which is the cause of a SIRVA. *Id.* at 8. Next, the logical sequence of cause and

effect for Petitioner is that the needle injection of a vaccine antigen near the bursa or rotator cuff tendon caused an inflammatory reaction. *Id.* at 6. A proximate temporal relationship is consistently reported by Petitioner in her medical records, and her condition was asymptomatic prior to the vaccination. *Id.*

Dr. Srikumaran spent the last half of his report assessing the medical literature that supports the theory of how vaccinations can cause shoulder pain. Srikumaran Rep. at 7–12. On the whole, these studies lend reliability to the theory of causation presented by Dr. Srikumaran, he argues. *Id.* at 8–10 (citing Bodor; Atanasoff; Arias). The clinical evidence supportive of SIRVA can be supplemented by growing epidemiological evidence. *Id.* at 10–11 (citing E. Hesse et al., *Risk for Subdeltoid Bursitis after Influenza Vaccination: A Population-Based Cohort Study*, Ann. Intern. Med., June 2020, at 4, filed as Ex. 16-10 (ECF No. 32-11); E. Hesse et al., *Shoulder Injury Related to Vaccine Administration (SIRVA): Petitioner Claims to the National Vaccine Injury Compensation Program, 2010-2016*, 38 Vaccine 1076, 1076–83 (2020), filed as Ex. 16-9 (ECF No. 32-10); B. Hibbs et al., *Reports of Atypical Shoulder Pain and Dysfunction Following Inactivated Influenza Vaccine, Vaccine Adverse Event Reporting System (VAERS), 2010-2017*, 38 Vaccine 1137, 1137–42 (2020), filed as Ex. 16-11 (ECF No. 32-12).

B. Respondent's Expert – Dr. Geoffrey Abrams

Like Dr. Srikumaran, Dr. Abrams is also an orthopedic surgeon and medical academic, and he prepared one written report for Respondent. Report, dated June 21, 2025, filed as Ex. A (ECF No. 38-1) ("Abrams Rep.").

Dr. Abrams received a Bachelor of Arts in Human Biology, with a concentration in Neuroscience from Stanford University in 2000. Curriculum Vitae, dated July 31, 2025, filed as Ex. B (ECF No. 38-2) ("Abrams CV") at 2. He received his medical degree from the University of California, San Diego before completing a surgical internship at Stanford University in 2008. *Id.* at 1–2. Dr. Abrams completed his residency at Stanford University Hospital and Clinics in 2012, and a fellowship at Rush University Medical Center in 2013. *Id.* at 1. Dr. Abrams is board certified in Orthopedic Surgery with a subspeciality in Orthopedic Sports Medicine, and is licensed to practice medicine in Illinois and California. *Id.* at 2. He currently serves as an Associate Professor at the Stanford University School of Medicine in Stanford, CA, where he also serves as the head team physician for several of Stanford University's varsity teams and professional sports teams in the area. *Id.* at 1. Throughout the course of his career, Dr. Abrams has published more than one hundred fifty peer reviewed publications on shoulder and other musculoskeletal pathology. *Id.* at 2–17.

Consistent with Dr. Srikumaran's approach, Dr. Abrams performed his own review of Petitioner's relevant medical history. Abrams Rep. at 1–5. Dr. Abrams began his analysis of Petitioner's claim by admitting that the evidence supports the contention that Petitioner did have

some shoulder discomfort after her vaccination, but deemed the intervening car accident to be the most likely contributor to her overall left shoulder pathology. *Id.* at 5. He highlighted the fact that Petitioner received an additional vaccine in her left shoulder just two days after the HPV vaccine, something that would be unusual if she was at that time experiencing significant pain. *Id*. There is no objective data between the vaccine and motor vehicle accident to determine if the pain was SIRVA-related or not. *Id.* It was possible, in Dr. Abrams's view, that Petitioner's shoulder pain prior to her accident was just a transient inflammatory process. *Id.*

Dr. Abrams contended that the affidavits provided by Petitioner and others did not provide enough details about the timeline or details about pain consistent with a SIRVA. Abrams Rep. at 6 (citing Rekha Kumar Aff.; Rosario Piccolo Aff.; Shabnam Fotoohi Aff.; Leila Hazratiha Aff.). The medical visit on September 17, 2021, was also unhelpful in distinguishing between the pain from the vaccination and the motor vehicle accident. *Id.* (citing Ex. 3 at 23). Petitioner at this visit was noted to have swelling in her left shoulder, a symptom that would be unusual to be present one-month post-vaccination. *Id.* Instead, Dr. Abrams argues, it was at this time more likely she was suffering from shoulder muscle contusion. *Id.* (citing H. Mueller-Wohlfahrt et al., *Terminology and Classification of Muscle Injuries in Sport: The Munich Consensus Statement*, 47 Br. J. Sports Med. 342, 345 (2013), filed as Ex. A-4 (ECF No. 38-5).

Additionally, the police report supported the conclusion that the car accident was significantly forceful, as the car sustained major damage and flipped onto its left side. Abrams Rep. at 6 (citing Ex. 13). The details from that accident supported the documentation from Petitioner's PCP that she had experienced an accident-related injury to her left shoulder. *Id.* at 6, 7. And when Petitioner regained her insurance and sought care a year after her last visit to the doctor, she was suffering from different symptoms and complaints than shortly after her vaccination. *Id.* at 7. Thus, at her appointment in October 2022, Petitioner complained of pain that radiated beyond her shoulder. *Id.* (citing Ex. 4 at 14). The non-shoulder symptoms of the neck, elbow, and fingers are not associated with vaccinations. *Id.* (citing *Whiplash (Neck Strain)*, Cleveland Clinic, (May 13, 2026), https://my.clevelandclinic.org/health/diseases/11982-whiplash.).

Dr. Abrams concluded by reiterating the opinion that Petitioner's intervening car accident provided a significant confounding variable in the context of an alleged SIRVA. Abrams Rep. at 7. Petitioner's symptoms were more likely than not mostly related to the car accident at her September appointment, and by October 2022 her symptoms were likely solely related to that accident. *Id.* at 8.

## III. Procedural History

This matter was initiated in March 2023, and was assigned to the SPU, given that it asserted a SIRVA—a commonly-litigated (and often easily settled) Program claim. *See* Petition. Respondent filed his Rule 4(c) Report in August 2024 challenging entitlement, however, and the case was transferred out of the SPU. *See* Respondent's Report, dated August 26, 2024 (ECF No. 23); Order, dated September 11, 2024 (ECF No. 24). The parties subsequently filed their respective expert reports. Although encouraged to reach a settlement, the parties were unsuccessful in doing so and elected to resolve the matter through a Ruling on the Record regarding entitlement and damages. The parties briefed their positions, and this matter is now ripe for resolution.

## IV. Parties' Arguments

*Petitioner*

Petitioner maintains that she has satisfied the Table requirements for a SIRVA claim caused by her vaccination. Mot. at 1. She begins by stating that Respondent did not challenge her contention that she did not have a history of left shoulder pain or dysfunction to explain her post-vaccination symptoms. *Id.* at 15. And the medical evidence does not document such, thereby satisfying this criterion of the claim. *Id.* (citing Ex. 3, 9, 14, 15).

Petitioner next turns to the onset of her shoulder pain. Although Respondent disputes this element because of "'vaguely'" reported pain and lack of detail in some of the evidentiary record, Petitioner argues the evidence preponderates in her favor. Mot. at 15−16 (citing Respondent's Report at 7−12; Ex. 8). Petitioner attributes the pain in her left shoulder to the vaccination, and shortly after the vaccination she contacted the Bodor Clinic to schedule an appointment. *Id.* at 16 (citing Ex. 3 at 24; Supp. Rekha Kumar Aff.). Petitioner also informed a co-worker of her symptoms within two weeks of vaccination. *Id.* (citing Ex. 11). She emphasizes that a special master may find onset is met even if occurrence of the first symptom was not recorded. *Id.* (citing 42 U.S.C. § 300aa-13(b)(2)). Because Petitioner clearly attributes her symptoms to her vaccine, and has support in the evidentiary record pre-dating the motor vehicle crash, she argues she has preponderantly established her vaccine caused symptoms within 48 hours. *Id.* at 17 (citing Ex. 3 at 24−25; Ex. 10; Ex. 11).

Petitioner further maintains that her pain and reduced range of motion were limited to her left shoulder. Mot. at 17. On September 17, 2021, Dr. Avakyan recorded Petitioner complaining of "left shoulder and arm pain and limited range of motion," with a "limitation on the range of motion of her left arm" and difficulties elevating her left arm since the injection of her vaccine five weeks prior. *Id.* at 18 (citing Ex. 3 at 24). Petitioner also demonstrated reduced range of motion during this examination. *Id.* (citing Ex. 3 at 25). Even Respondent's expert admitted that Petitioner had "'some shoulder pain following the vaccination.'" *Id.* (citing Abrams Rep. at 5).

Petitioner dismisses Respondent's claims that she was suffering from vaccination myositis. Mot. at 19 (citing Abrams Rep. at 5−6). Petitioner's treating physicians did not diagnose her with

vaccine myositis, and she also experienced reduced range of motion along with pain in her left shoulder. *Id.* (citing Ex. 3 at 24−25). The literature submitted by Dr. Abrams does not support that diagnosis either, given the overall record. *Id.* (citing E. Samuelson et al., *Isolated Infraspinatus Myositis after Intramuscular Vaccine Administration*, Case Rep. Orthop., Aug. 2022 at 1−3, filed as Ex. A-2 (ECF No. 38-3)). The other case report submitted by Dr. Abrams concerns deltoid myositis and explains symptoms and treatment different from that experienced by Petitioner. *Id.* at 19–20 (citing S. Urayoshi et al., *A Case of Myositis of the Deltoid Muscle of the Upper Arm Developing 1 Week after Influenza Vaccination: Case Report*, 3 Clin. Case Reps. 135, 135−136 (2015), filed as Ex. A-3 (ECF No. 38-4)). Instead, the evidence preponderantly establishes that Petitioner suffered left shoulder pain, reduced range of motion, and left shoulder impingement after her vaccination. *Id.* at 20. Petitioner's vaccination led to bursitis, shoulder pain, and decreased range of motion, with any other conditions unlikely and unsupported. *Id.* (citing Srikumaran Rep. at 6).

Petitioner also maintains the Act's severity requirement is satisfied. Mot. at 21. She admits that after her initial appointment on September 17, 2021, Petitioner did not seek treatment until more than a year later. *Id.* at 22 (citing Respondent's Report at 9). The thirteen-month gap in treatment is significant, but Petitioner notes that she did treat her shoulder during this time through other, more informal modalities such as massage therapy. *Id.* at 25 (citing Rosaria Piccolo Aff.). Petitioner also did not have health insurance during the gap. *Id.* (citing Ex. 18; Ex. 19). But once she regained insurance, she began to treat for her shoulder again. *Id.* (citing Ex. 4 at 14).

Petitioner also disputes Respondent's argument that Petitioner's vaccine-related symptoms were temporary, with any subsequent issues through October 2022 attributable to the September 2021 motor vehicle accident. Mot. at 22 (citing Abrams Rep. at 5–6). She stresses that she experienced immediate pain after vaccination. *Id.* at 23 (citing Leila Hazratiha Aff.). Petitioner also did not suffer any major injuries in the crash, as supported by the record. *Id.* (citing Supp. Rekha Kumar Aff.; Ex. 13 at 7). And the assertions made by Dr. Avakyan about Petitioner's arm getting stuck between the car door and her body, amongst other claims, are not supported anywhere else in the record. *Id.* at 23−24 (citing Ex. 3 at 23, 24). There was no evidence Petitioner sustained a whiplash injury, despite Dr. Abrams's assertion that her symptoms are consistent with one. *Id.* at 24 (citing Ex. 3 at 24−25).

*Respondent*

Respondent maintains that Petitioner has not satisfied the elements for her alleged Table SIRVA claim. Opp. at 16. Respondent begins by asserting that Petitioner did not establish that she meets the severity requirement of the Vaccine Act. *Id.* There is no objective evidence of a SIRVA, or any other identifiable shoulder injury after Petitioner's vaccination, before her motor vehicle accident. *Id.* at 17 (citing Abrams Rep. at 5−6). The only evidence provided by Petitioner is statements from herself, an email about scheduling an appointment at the Bodor Clinic, and

affidavits from family and friends years after the alleged injury and in the context of litigation. *Id.* at 18 (citing Mot. at 23).

Even assuming that Petitioner's post-vaccination discomfort was vaccine-related, there is insufficient evidence to establish the injury lasted for more than six months. Opp. at 18. The results from Petitioner's exam after her motor vehicle accident and vaccination support a "multifactorial initial injury that developed after injection of vaccine" followed by muscle strain. *Id.* at 18−19 (citing Ex. 3 at 23−25). Although Petitioner argues the evidence does not establish that she experienced a shoulder injury from the motor vehicle accident, the accident report reflects that she complained of "pain." *Id.* at 19 (citing Ex. 13 at 7). Additionally, her declining medical care immediately after the accident only demonstrates that she did not require emergency care—not that she was totally uninjured. *Id.*

Respondent next argues that the medical records from the accident are not unreliable as Petitioner contended, but are instead the most objective medical evidence in the case. Opp. at 19. This medical appointment was the only relevant post-vaccination appointment before the gap, and subsequent statements should be afforded minimal weight compared to this contemporaneous information. *Id.* at 19−20. Once she returned to a physician in October 2022, she complained of shoulder symptoms different from those she experienced before, establishing a lack of reliable evidence that any alleged vaccine-related shoulder injury lasted beyond one month after vaccination. *Id.* (citing Ex. 4 at 14−17). Subsequent symptoms are simply more likely due to that accident. *Id.* at 25 (citing *Kincaid v. Sec'y of Health & Hum. Servs.*, No. 20-0917V, 2025 WL 4072368, at *3 (Fed. Cl. Spec. Mstr. Dec. 17, 2025)).

Although Petitioner has attempted to establish that she treated her shoulder in the fall of 2021 (at therapy sessions with Ms. Piccolo), no objective evidence has been filed to support the conclusion that the alleged massage therapy sessions actually occurred. Opp. at 20 (citing Mot. at 25; Rosaria Piccolo Aff. at 2; Supp. Rekha Kumar Aff. at 3). And they did not begin until a few months after Petitioner's vaccination and motor vehicle accident, and therefore do not establish Petitioner likely experienced vaccine-related symptoms beyond September 2021. *Id.* (citing Rosaria Piccolo Aff. at 2).

Respondent otherwise contends that the SIRVA Table elements are unmet. He argues, for example, that Petitioner did not establish by preponderant evidence that her pain began within 48 hours of receiving her vaccine. Opp. at 21−22. The affidavits submitted by Petitioner in support of this requirement are vague and unhelpful, and are not corroborated by objective evidence in the record. *Id.* at 22 (citing Leena Kumar Aff.; Shabnam Fotoohi Aff.; Rosaria Piccolo Aff. at 1; Leila Hazratiha Aff. at 1). Petitioner also received another vaccine in the same arm two days after her initial vaccine, which suggests Petitioner was not likely having significant shoulder pain at the time. *Id.* (citing Ex. 2 at 10; Abrams Rep. at 7). The emails upon by Petitioner also do not provide support for onset within 48 hours. *Id.* at 23. The August 27, 2021, email does not contain specific information about when Petitioner's pain began, and the second email likewise does not contain

any specifics regarding onset. *Id.* (citing Ex. 10; Ex. 11). The medical records provided by Petitioner are too vague to sufficiently establish onset. *Id.* Simply because the medical records set forth instances in which Petitioner attributed her pain to her vaccination does not mean onset likely occurred in that timeframe. *Id.* at 24 (citing Ex. 16 at 4). Such reports in the record are also inconsistent, with Petitioner recounting facts differently between affidavits. *Id.* (citing Rekha Kumar Aff. at 2; Supp. Rekha Humar Aff. at 2, 3; Ex. 3 at 23).

*Reply*

Petitioner responded to Respondent's Opposition by contending that Respondent was relying on a higher evidentiary burden than is required in establishing facts. Reply at 1−2. Special masters are required to review the evidence and make findings of facts based on the totality of the evidence presented, not just each piece of evidence individually. *Id.* at 2. The evidence together preponderates in favor of Table onset. *Id.* at 3. Petitioner reaching out to the Bodor Clinic is strong evidence Petitioner associated her injury with her vaccination, and the email she sent to her co-worker specifically mentions SIRVA. *Id.* (citing Rekha Kumar Aff. at 5; Ex. 11). Petitioner clearly identified her injury as SIRVA as well. *Id.* at 4. Petitioner researching her SIRVA so close in time to her vaccination was done in anticipation of treatment, supporting a finding that her left shoulder pain began immediately following her vaccination. *Id.*

Petitioner further argues that she has satisfied the severity requirement required for a SIRVA claim. Reply at 5. Prior to her motor vehicle accident, Petitioner had already reported SIRVA-related symptoms to her co-worker. *Id.* The medical record from her appointment with Dr. Avakyan provides clear evidence of post-vaccination symptoms. *Id.* at 5—6 (citing Ex. 3 at 24). There is also not enough evidence of the mechanics of the car crash to come to the conclusion that she suffered a major injury to her left shoulder. *Id.* at 7. At most, Petitioner argues she experienced a contusion to her left arm or whiplash that would have resolved itself, distinguishing her case from others in which petitioners do not attribute their injury to their vaccines. *Id.* (citing *Kincaid*, WL 4072368, at *6). If her symptoms can be attributed to both the vaccination and the motor vehicle accident, that is not a reason to dismiss the case but is instead an issue to be assessed during the damages phase. *Id.* at 9.

## ANALYSIS

### I. SIRVA Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of the evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "'consistent, clear, cogent, and compelling.'" *Sanchez v. Sec'y of Health & Hum. Servs.*, No. 11-685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blustein v. Sec'y of Health & Hum. Servs.*, No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement, a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a HPV vaccine. 42 C.F.R. § 100.3(a)(XVI)(B). The criteria for establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g., tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;
(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

## II. The Act's Severity Requirement is Not Met

To satisfy the Act's "severity requirement," a petitioner must show by a preponderance of the evidence that she "suffered the residual effects or complications of [the alleged injury] for more than 6 months." 42 U.S.C. § 300aa-11(c)(1)(D)(i); *see Wright v. Sec'y of Health & Hum. Servs.*, 22 F.4th 999, 1002 (Fed. Cir. 2022); *Wagner v. Sec'y of Health & Hum. Servs.*, No. 17-1388V, 2019 WL 3297509, at *5 (Fed. Cl. Spec. Mstr. May 8, 2019). The Vaccine Act's severity requirement goes only to the *persistence* of residual effects, not the intensity of symptoms. *See* 42 U.S.C. § 300aa-11(c)(1)(D)(i). "[E]ven mild symptoms that do not require medical care may satisfy the severity requirement," but "ongoing medical treatment for conditions unrelated to the alleged vaccine injury do not." *Wagner*, 2019 WL 3297509, at *5. Here, assuming onset of between August 19–21, 2021, Petitioner would need to show residual effects through at least mid-February 2022.

In opposing severity, Respondent highlights the September 2021 motor vehicle accident as being the true cause of Petitioner's continued shoulder pain. Opp. at 18 (citing Ex. 13 at 7; Ex. 3 at 23). He also observes the subsequent thirteen-month gap in treatment between Petitioner's September 17, 2021 appointment and the next time she mentioned shoulder issues. *Id.* at 20. In reaction, Petitioner argues she was receiving massages to help her with her shoulder pain during this time, and was unable to pursue medical appointments because of lack of insurance coverage during this time. Mot. at 25 (citing Rosaria Piccolo Aff.). (Petitioner has not, however, offered an explanation for how she tolerated an intervening second vaccination, which occurred two days after receipt of the allegedly-causal HPV vaccine, although this is the kind of issue that goes as much to damages severity as the severity requirement).

Based on the totality of the record, I find Petitioner has not satisfied the severity requirement, and is thus not entitled to compensation. The thirteen-month gap in treatment is simply too large to ignore. Ex. 3 at 23; Ex. 4 at 14. SIRVAs are understood to be *acute* events involving significant pain almost immediately after vaccination, and related shoulder sequelae. While treatment delays are not uncommon (especially since individuals reasonably assume that vaccination-related pain might be transient), it is highly uncommon for individuals to wait more

than six months in follow-up to an alleged SIRVA injury. The longer the timeframe at issue, the less likely it becomes that the injury was severe enough overall to result in the required six months of residual effects.

Petitioner's efforts to explain or contextualize the gap in treatment are ultimately unpersuasive. First, she argues that she could not treat due to a lack of insurance. Mot. at 25. This is facially a reasonable explanation, and in many contexts can explain a delay. But the delay in this case is so great that it is difficult to conclude it is likely that Petitioner's shoulder concerns lingered for so long. It is reasonable to expect a person suffering from extended pain to seek some kind of treatment, however limited or inexpensive.

The intervening car accident, experienced close in time to the vaccination, complicates the picture. The accident Petitioner suffered was (at least from the objective evidence of it from police reports) quite significant. Ex. 13 at 7 (noting major damage to Petitioner's car). And indeed Petitioner did report some post-accident concerns, which could be viewed as SIRVA exacerbation. *See, e.g.,* Ex. 4 at 14 (recalling her shoulder pain worsened in the aftermath of her accident). But even this incident did not lead her to seek treatment for an extended period of time. If the car accident was itself not enough to require subsequent medical care, it is very difficult to conclude that an earlier, SIRVA-like reaction to a vaccination had any lingering effects either. (And again, the fact Petitioner received an intervening vaccine, in the affected shoulder, further reduces the likelihood that her SIRVA reaction was severe enough to linger the required six months). *See* Ex. 2 at 10.

I also note that this case does not involve only one gap, but a second one that occurred even after Petitioner's insurance concerns were addressed. Thus, there was additional delay from October 2022 to the spring of 2023, when she began a PT series. *See* Ex. 9 (establishing twenty PT appointments with Dr. Leung between May 2023 and April 2024); Ex. 15 at 3 (observing constant shoulder pain in Petitioner). This second gap compounds the problem in establishing severity, and is not adequately explained.

Second, Petitioner contends she was being treated for her shoulder pain through massage therapy in the fall of 2021. Mot. at 25 (citing Rosario Piccolo Aff.). Evidence of informal or less-invasive kinds of treatment like massage therapy have been successfully referenced as proof of continuation of symptoms in the Program sufficient to meet the severity requirement. *See, e.g.*, *Ogea v. Sec'y of Health & Hum. Servs.*, No. 22-025 V, 2025 WL 1752390 at *4 (Fed. Cl. Spec. Mstr. May 20, 2025). But in this case, the alleged treatments were not adequately corroborated by other evidence, since their proof lies solely in witness statements. Although there is no presumption that contemporaneous records are superior to affidavits or witness statements, such witness testimony must be compelling to overcome objective medical records. *McCoy v. Sec'y of Health & Hum. Servs.*, No. 20-1321V, 2024 WL 5297985, at *8 (Fed. Cl. Spec. Mstr. Oct. 15, 2024) (citing *Kirby*, 997 F.3d at 1383; *Sanchez*, 2013 WL 1880825, at *3.). And even if the *fact*

of some treatments were established, it has not been shown they continued six months beyond the severity cut-off.

Finally, the overall evidence in this case is supportive of the conclusion that even if Petitioner did experience a close-in-time SIRVA-like injury, it was very mild, and did not likely last for the required six months. Petitioner's provider at her initial appointment recommended non-invasive, mild treatment for her shoulder pain, including physical therapy and a nonsteroidal topical anti-inflammatory medication. Ex. 3 at 23, 24. Even after her motor vehicle accident, Petitioner did not attend any shoulder-related treatment with a medical provider other than the initial September 17, 2021 appointment. Ex. 3 at 23. This absence of treatment between September 2021 and October 2022, despite Petitioner being in a car accident in which her car was reported to have rolled over upon impact, indicates Petitioner was likely not experiencing severe pain or discomfort so as to cause her to seek treatment sooner than she eventually did. *See* Ex. 4 at 14; Ex. 3 at 23; Ex. 13 at 7. Dr. Abrams was more persuasive in his construction of the medical record and the treatment course it reflects than Dr. Srikumaran.

Petitioner may have been able to meet some of the SIRVA elements despite Respondent's objections. But all Act claims, Table or otherwise, must demonstrate six months of post-onset residual effects. That has not been preponderantly established on the basis of this record.

## CONCLUSION

Because Petitioner cannot demonstrate she meets the Act's six-month severity requirement, I am compelled to deny compensation.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.

**IT IS SO ORDERED**.

s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master